**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

SERGIO ESPINOSA,

     Plaintiff,

v.

                               CASE NO.: 1:18-cv-21703-JEM

FIRST CONTACT, LLC, IENERGIZER, INC.,
CONVERGENT   OUTSOURCING,   INC.,
AND EGS FINANCIAL CARE, INC.

     Defendant.

_____/

**<u>AMENDED COMPLAINT</u>**

1.      Unwanted "Robocalls" are the #1 consumer complaint in America today.

2.      The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[1]

3.      Plaintiff, Sergio Espinosa, alleges that Defendants, First Contact, LLC, IEnergizer, Inc., Convergent Outsourcing, Inc., and EGS Financial Care, Inc., robocalled the Plaintiff more than a mindboggling 1000 times.

4.      First Contact, LLC, IEnergizer, Inc., Convergent Outsourcing, Inc., and EGS Financial Care, Inc. have corporate policies to robocall people thousands of times.

5.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).   Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).   Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6.      Plaintiff, Sergio Espinosa, alleges Defendants, First Contact, LLC, IEnergizer, Inc., Convergent Outsourcing, Inc., and EGS Financial Care, Inc., robocalled him more than 1000 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"), Invasion of Privacy ("IOP"), and Intentional Infliction of Emotional Distress ("IIED").

7.      Robocalls are very inexpensive to make.   As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8.      The TCPA was enacted to prevent companies like First Contact, LLC, IEnergizer, Inc., Convergent Outsourcing, Inc., and EGS Financial Care, Inc., from invading American citizens' privacy and prevent illegal robocalls.

9.      Congress enacted the TCPA to prevent real harm.   Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and

decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

10.     According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

11.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12.     Violations described in the Complaint occurred while Plaintiff was in Homestead, FL.

## FACTUAL ALLEGATIONS REGARDING FIRST CONTACT, LLC

13.     Plaintiff is a natural person and citizen of the State of Florida, residing in Homestead, Florida.

14.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

15.     Plaintiff is an "alleged debtor."

16.     Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

3

17.     Defendant First Contact, LLC, is a Minnesota limited liability company with its registered office address in St. Paul, Minnesota, and its principal executive office in St. Petersburg, Florida.  First Contact, LLC regularly conducts business in Florida.

18.     Defendant, First Contact, LLC, is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

19.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

20.     Plaintiff is the regular user and carrier of the cellular telephone number at issue (786) 728-2298.  Plaintiff was the regular user and carrier of the cellular telephone number at issue (305) 778-8916.

21.     Plaintiff was the "called party" during each phone call subject to this lawsuit.

22.     Defendant, First Contact, LLC, intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

23.     Defendant, First Contact, LLC, did not have the "express consent" of the Plaintiff to call his cell phone.

24.     "Express consent" is narrowly construed by the Courts.

25.     It is the Defendant, First Contact, LLC,'s burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

26.     It is the Defendant, First Contact, LLC,'s burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

4

27.     Defendant, First Contact, LLC, was put on notice Plaintiff did not want the Defendant, First Contact, LLC, contacting him.

28.     Defendant, First Contact, LLC, did not have the express consent of the Plaintiff to call him on the accounts they called him on.

29.     Plaintiff expressly revoked any express consent Defendant, First Contact, LLC, may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

30.     Defendant, First Contact, LLC, attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

31.     Defendant, First Contact, LLC, made at least one call to (786) 728-2298 and (305) 778-8916.

32.     Defendant, First Contact, LLC, made at least one call to (786) 728-2298 and (305) 778-8916 using an ATDS.

33.     Defendant, First Contact, LLC, made at least ten (10) calls to (786) 728-2298  and (305) 778-8916.

34.     Defendant, First Contact, LLC, made at least ten (10) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

35.     Defendant, First Contact, LLC, made at least one hundred (100) calls to (786) 728-2298 and  (305) 778-8916.

36.     Defendant, First Contact, LLC, made at least one hundred (100) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

37.     Defendant, First Contact, LLC, made at least two hundred (200) calls to (786) 728-2298  and  (305) 778-8916.

5

38.     Defendant, First Contact, LLC, made at least two hundred (200) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

39.     Defendant, First Contact, LLC, made at least three hundred fifty (350) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

40.     Defendant, First Contact, LLC, made at least three hundred fifty (350) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

41.     Each call the Defendant, First Contact, LLC, made to (786) 728-2298 and (305) 778-8916 in the last four years was made using an ATDS.

42.     Each call the Defendant, First Contact, LLC, made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

43.     Defendant, First Contact, LLC, has called other people's cell phones without their express consent.

44.     Each call the Defendant, First Contact, LLC, made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

45.     The calls at issue were placed by the Defendant, First Contact, LLC, using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

46.     Plaintiff repeatedly requested the Defendant to stop calling  his cell phone, however, the Defendant, First Contact, LLC, continued to make calls.

47.     Defendant, First Contact, LLC, has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

6

48.     Plaintiff's conversations with the Defendant, First Contact, LLC, putting them on notice that they did not want more phone calls were ignored.

49.     Defendant, First Contact, LLC, has recorded at least one conversation with the Plaintiff.

50.     Defendant, First Contact, LLC, has recorded numerous conversations with the Plaintiff.

51.     Defendant, First Contact, LLC, has made approximately three hundred fifty (350) calls to Plaintiff's aforementioned cellular telephone number since in or about  April of 2014 which will be established exactly once Defendant, First Contact, LLC, turns over their dialer records.

52.     Despite actual knowledge of their wrongdoing, the Defendant, First Contact, LLC, continued the campaign of abusive robocalls.

53.     Defendant, First Contact, LLC, has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

54.     By effectuating these unlawful phone calls, Defendant, First Contact, LLC, have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

55.     Defendant, First Contact, LLC,'s aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

56.     Defendant, First Contact, LLC,'s phone calls harmed Plaintiff by wasting his time.

57.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant, First Contact, LLC,'s phone calls harmed

Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

58.     Defendant, First Contact, LLC,'s corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant, First Contact, LLC, may have mistakenly believed it had.

59.     Defendant, First Contact, LLC,'s corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

60.     Defendant, First Contact, LLC, has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

61.      Plaintiff expressly revoked any consent Defendant, First Contact, LLC, may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant, First Contact, LLC,'s placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

62.     Defendant, First Contact, LLC, never had the Plaintiff's expressed consent for placement of telephone calls to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

63.     None of Defendant, First Contact, LLC,'s telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

64.     Defendant, First Contact, LLC, violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

8

65.     Defendant, First Contact, LLC, willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA Against First Contact, LLC)

66.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

67.     Defendant, First Contact, LLC, willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff without his permission or after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

68.     Defendant, First Contact, LLC, knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

69.     Defendant, First Contact, LLC,, First Contact, LLC, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

70.     As a result of Defendant, First Contact, LLC,'s illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

71.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, First Contact, LLC, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, First Contact, LLC, for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

9

## COUNT II
**(Violation of the FDCPA Against First Contact, LLC)**

72.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

73.     At all times relevant to this action, Defendant, First Contact, LLC, is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

74.     Defendant, First Contact, LLC, engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

75.      Defendant, First Contact, LLC, engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

76.     Defendant, First Contact, LLC, engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

## COUNT III
**(Violation of the FCCPA Against First Contact, LLC)**

77.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

78.     At all times relevant to this action Defendant, First Contact, LLC, is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

79.     Defendant, First Contact, LLC, has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

80.     Defendant, First Contact, LLC, has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his  family.

81.     Defendant, First Contact, LLC, has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant, First Contact, LLC, knows that the debt is not legitimate or assert the existence of some legal right when Defendant, First Contact, LLC, knows that right does not exist.

82.     Defendant, First Contact, LLC,'s actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, First Contact, LLC, for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

<u>**COUNT IV**</u>
**(Invasion of Privacy – Intrusion Upon Seclusion Against First Contact, LLC)**

83.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

84.     Defendant, First Contact, LLC, through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

85.     All of the calls made to Plaintiff's cell phone by Defendant, First Contact, LLC, and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

11

86.     Defendant, First Contact, LLC,'s persistent autodialed calls to his cellular phone eliminated Plaintiff's right to be left alone.

87.     Defendant, First Contact, LLC,'s autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during his work, and continually frustrated and annoyed Plaintiff.

88.     These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

89.     By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant, First Contact, LLC, invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

90.     Defendant, First Contact, LLC,'s harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to his cellular telephone after requests to stop is highly offensive to a reasonable person.

91.     Defendant, First Contact, LLC, intentionally intruded upon Plaintiff's solitude and seclusion.

92.     As a result of Defendant, First Contact, LLC,'s action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, First Contact, LLC, for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

<u>COUNT V</u>
**(Intentional Infliction of Emotional Distress Against First Contact, LLC)**

93.    Plaintiff incorporates Paragraph one (1) through sixty-five (65).

94.    The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

95.    It is beyond the pale of decency to robocall anybody 350 times.

96.    The damage to the Plaintiff was and is immense.  The Plaintiff had a stunned sense of helplessness because he could not stop the calls.

97.    To call somebody this amount of times is inhumane.

98.    It is utterly uncivilized to robocall someone 350 times.

99.    If a person called another person 350 times, the caller would most likely be in prison for criminal harassment.

100.    This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

101.    The calls to Plaintiff by Defendant, First Contact, LLC, are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant, First Contact, LLC, for punitive damages and such other and further relief as the Court shall deem just and proper.

## FACTUAL ALLEGATIONS REGARDING iENERGIZER, INC.

102.    Plaintiff is a natural person and citizen of the State of Florida, residing in Homestead, Florida.

13

103.    Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

104.    Plaintiff is an "alleged debtor."

105.    Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

106.    Defendant iEnergizer, Inc, is a corporation with its registered office address in in Austin, Texas, and regularly conducts business in Florida.

107.    Defendant, iEnergizer, Inc., is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

108.    The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

109.    Plaintiff is the regular user and carrier of the cellular telephone number at issue (786) 728-2298.  Plaintiff was the regular user and carrier of the cellular telephone number at issue (305) 778-8916.

110.    Plaintiff was the "called party" during each phone call subject to this lawsuit.

111.    Defendant, iEnergizer, Inc., intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

112.    Defendant, iEnergizer, Inc., did not have the "express consent" of the Plaintiff to call his cell phone.

113.    "Express consent" is narrowly construed by the Courts.

14

114.    It is the Defendant, iEnergizer's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

115.    It is the Defendant, iEnergizer,'s burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

116.    Defendant, iEnergizer, was put on notice Plaintiff did not want the Defendant, iEnergizer, Inc. contacting him.

117.    Defendant, iEnergizer, Inc., did not have the express consent of the Plaintiff to call him on the accounts they called him on.

118.    Plaintiff expressly revoked any express consent Defendant, iEnergizer, Inc., may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

119.    Defendant, iEnergizer, Inc., attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

120.    Defendant, iEnergizer, Inc., made at least one call to (786) 728-2298 and (305) 778-8916.

121.    Defendant, iEnergizer, Inc., made at least one call to (786) 728-2298 and (305) 778-8916 using an ATDS.

122.    Defendant, iEnergizer, Inc., made at least ten (10) calls to (786) 728-2298  and (305) 778-8916.

123.    Defendant, iEnergizer, Inc., made at least ten (10) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

15

124.    Defendant, iEnergizer, Inc., made at least one hundred (100) calls to (786) 728-2298  and (305) 778-8916.

125.    Defendant, iEnergizer, Inc., made at least one hundred (100) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

126.    Defendant, iEnergizer, Inc., made at least two hundred (200) calls to (786) 728-2298 and (305) 778-8916.

127.    Defendant, iEnergizer, Inc., made at least two hundred (200) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

128.    Defendant, iEnergizer, Inc., made at least three hundred (300) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

129.    Defendant, iEnergizer, Inc., made at least three hundred (300) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

130.    Each call the Defendant, iEnergizer, Inc., made to  (786) 728-2298 and (305) 778-8916 in the last four years was made using an ATDS.

131.    Each call the Defendant, iEnergizer, Inc., made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

132.    Defendant, iEnergizer, Inc., has called other people's cell phones without their express consent.

133.    Each call the Defendant, iEnergizer, Inc., made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

16

134.   The calls at issue were placed by the Defendant, iEnergizer, Inc., using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

135.   Plaintiff repeatedly requested the Defendant to stop calling his cell phone, however, the Defendant, iEnergizer, Inc., continued to make calls.

136.   Defendant, iEnergizer, Inc., has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

137.   Plaintiff's conversations with the Defendant, iEnergizer, Inc., putting them on notice that they did not want more phone calls were ignored.

138.   Defendant, iEnergizer, Inc., has recorded at least one conversation with the Plaintiff.

139.   Defendant, iEnergizer, Inc., has recorded numerous conversations with the Plaintiff.

140.   Defendant, iEnergizer, Inc., has made approximately three hundred (300) calls to Plaintiff's aforementioned cellular telephone number since in or about  April of 2014 which will be established exactly once Defendant, iEnergizer, Inc., turns over their dialer records.

141.   Despite actual knowledge of their wrongdoing, the Defendant, iEnergizer, Inc's, continued the campaign of abusive robocalls.

142.   Defendant, iEnergizer, Inc., has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

143.   By effectuating these unlawful phone calls, Defendant, iEnergizer, Inc., have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

17

144.    Defendant, iEnergizer, Inc.,'s aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

145.    Defendant, iEnergizer, Inc.,'s phone calls harmed Plaintiff by wasting his time.

146.    Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant, iEnergizer, Inc.,'s phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

147.    Defendant, iEnergizer Inc.,'s corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant, iEnergizer, Inc., may have mistakenly believed it had.

148.    Defendant, iEnergizer, Inc.,'s corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

149.    Defendant, iEnergizer, Inc., has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

150.     Plaintiff expressly revoked any consent Defendant, iEnergizer, Inc., may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant, iEnergizer, Inc.,'s placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

151.    Defendant, iEnergizer, Inc., never had the Plaintiff's expressed consent for placement of telephone calls to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

152.    None of Defendant, iEnergizer, Inc.,'s telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

153.    Defendant, iEnergizer, Inc., violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

154.    Defendant, iEnergizer, Inc., willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA Against iEnergizer, Inc.)

155.    Plaintiff incorporates Paragraphs one hundred two (102) through one hundred fifty four (154).

156.    Defendant, iEnergizer, Inc., willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff without his permission and after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

157.    Defendant, iEnergizer, Inc., knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

158.    Defendant, iEnergizer, Inc., repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

159.   As a result of Defendant, iEnergizer, Inc.,'s illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

160.   Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, iEnergizer, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, iEnergizer, Inc., for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FDCPA Against iEnergizer, Inc.)

161.   Plaintiff incorporates Paragraphs one hundred two (102) through one hundred fifty four (154).

162.   At all times relevant to this action, Defendant, iEnergizer, Inc., is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

163.   Defendant, iEnergizer, Inc., engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

164.   Defendant, iEnergizer, Inc., engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

165.   Defendant, iEnergizer, Inc., engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

20

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

**COUNT III**
**(Violation of the FCCPA Against iEnergizer, Inc.)**

166.    Plaintiff incorporates Paragraphs one hundred two (102) through one hundred fifty four (154).

167.    At all times relevant to this action Defendant, iEnergizer, Inc., is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

168.    Defendant, iEnergizer, Inc., has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

169.    Defendant, iEnergizer, Inc., has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his  family.

170.    Defendant, iEnergizer, Inc., has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant, iEnergizer, Inc., knows that the debt is not legitimate or assert the existence of some legal right when Defendant, iEnergizer, Inc., knows that right does not exist.

171.    Defendant, iEnergizer, Inc.,'s actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, iEnergizer, Inc., for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

<u>COUNT IV</u>
**(Invasion of Privacy – Intrusion Upon Seclusion Against iEnergizer, Inc.)**

172.    Plaintiff incorporates Paragraphs one hundred two (102) through one hundred fifty four (154).

173.    Defendant, iEnergizer, Inc., through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

174.    All of the calls made to Plaintiff's cell phone by Defendant, iEnergizer, Inc., and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

175.    Defendant, iEnergizer, Inc.,'s persistent autodialed calls to his cellular phone eliminated Plaintiff's right to be left alone.

176.    Defendant, iEnergizer, Inc.,'s autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during his work, and continually frustrated and annoyed Plaintiff.

177.    These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

178.    By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant, iEnergizer, Inc., invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

179.    Defendant, iEnergizer, Inc.,'s harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to his cellular and home telephone after requests to stop is highly offensive to a reasonable person.

22

180.    Defendant, iEnergizer, Inc., intentionally intruded upon Plaintiff's solitude and seclusion.

181.    As a result of Defendant, iEnergizer, Inc.,'s action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, iEnergizer, Inc., for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### COUNT V
### (Intentional Infliction of Emotional Distress Against iEnergizer, Inc.)

182.    Plaintiff incorporates Paragraph one hundred two (102) through one hundred fifty four (154).

183.    The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

184.    It is beyond the pale of decency to robocall anybody  times.

185.    The damage to the Plaintiff was and is immense.  The Plaintiff had a stunned sense of helplessness because he could not stop the calls.

186.    To call somebody this amount of time is inhumane.

187.    It is utterly uncivilized to robocall someone 200 times.

188.    If a person called another person 200 times, the caller would most likely be in prison for criminal harassment.

189.    This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

190.    The calls to Plaintiff by Defendant, iEnergizer, Inc., are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant, iEnergizer, Inc., for punitive damages and such other and further relief as the Court shall deem just and proper.

### FACTUAL ALLEGATIONS REGARDING CONVERGENT OUTSOURCING, INC.

191. Plaintiff is a natural person and citizen of the State of Florida, residing in Homestead, Florida.

192. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

193. Plaintiff is an "alleged debtor."

194. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

195. Defendant Convergent Outsourcing, Inc, is a corporation with its principal place of business in Renton, Washington and regularly conducts business in Florida.

196. Defendant, Convergent Outsourcing, Inc., is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

197. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

198. Plaintiff is the regular user and carrier of the cellular telephone number at issue (786) 728-2298.  Plaintiff was the regular user and carrier of the cellular telephone number at issue (305) 778-8916.

199. Plaintiff was the "called party" during each phone call subject to this lawsuit.

200.    Defendant, Convergent Outsourcing, Inc. intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

201.    Defendant, Convergent Outsourcing, Inc., did not have the "express consent" of the Plaintiff to call his cell phone.

202.    "Express consent" is narrowly construed by the Courts.

203.    It is the Defendant, Convergent Outsourcing, Inc. burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

204.    It is the Defendant, Convergent Outsourcing, Inc.'s burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

205.    Defendant, Convergent Outsourcing, Inc., was put on notice Plaintiff did not want the Defendant, Convergent Outsourcing, Inc. contacting him.

206.    Defendant, Convergent Outsourcing, Inc., did not have the express consent of the Plaintiff to call him on the accounts they called him on.

207.    Plaintiff expressly revoked any express consent Defendant, Convergent Outsourcing, Inc., may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

208.    Defendant, Convergent Outsourcing, Inc., attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

209.    Defendant, Convergent Outsourcing, Inc., made at least one call to (786) 728-2298.

25

210.    Defendant, Convergent Outsourcing, Inc., made at least one call to (786) 728-2298 and (305) 778-8916 using an ATDS.

211.    Defendant, Convergent Outsourcing, Inc., made at least ten (10) calls to (786) 728-2298  and (305) 778-8916.

212.    Defendant, Convergent Outsourcing, Inc., made at least ten (10) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

213.    Defendant, Convergent Outsourcing, Inc., made at least one hundred (100) calls to (786) 728-2298 and (305) 778-8916.

214.    Defendant, Convergent Outsourcing, Inc., made at least one hundred (100) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

215.    Defendant, Convergent Outsourcing, Inc., made at least two hundred (200) calls to (786) 728-2298 and (305) 778-8916.

216.    Defendant, Convergent Outsourcing, Inc., made at least two hundred (200) calls to (786) 728-2298 and (305) 778-8916 using an ATDS.

217.    Each call the Defendant, Convergent Outsourcing, Inc., made to (786) 728-2298 and (305) 778-8916 in the last four years was made using an ATDS.

218.    Each call the Defendant, Convergent Outsourcing, Inc., made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

219.    Defendant, Convergent Outsourcing, Inc., has called other people's cell phones without their express consent.

220.    Each call the Defendant, Convergent Outsourcing, Inc., made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called,

26

without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

221.    The calls at issue were placed by the Defendant, Convergent Outsourcing, Inc., using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

222.    Plaintiff repeatedly requested the Defendant, Convergent Outsourcing, Inc. to stop calling his cell phone, however, the Defendant, Convergent Outsourcing, Inc., continued to make calls.

223.    Defendant, Convergent Outsourcing, Inc., has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

224.    Plaintiff's conversations with the Defendant, Convergent Outsourcing, Inc., putting them on notice that they did not want more phone calls were ignored.

225.    Defendant, Convergent Outsourcing, Inc., has recorded at least one conversation with the Plaintiff.

226.    Defendant, Convergent Outsourcing, Inc., has recorded numerous conversations with the Plaintiff.

227.    Defendant, Convergent Outsourcing, Inc., has made approximately three hundred (200) calls to Plaintiff's aforementioned cellular telephone number since in or about April of 2014 which will be established exactly once Defendant, Convergent Outsourcing, Inc., turns over their dialer records.

228.    Despite actual knowledge of their wrongdoing, the Defendant, Convergent Outsourcing, Inc., continued the campaign of abusive robocalls.

229.    Defendant, Convergent Outsourcing, Inc., has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

230.    By effectuating these unlawful phone calls, Defendant, Convergent Outsourcing, Inc., have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

231.    Defendant, Convergent Outsourcing, Inc.,'s aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

232.    Defendant, Convergent Outsourcing, Inc.,'s phone calls harmed Plaintiff by wasting his time.

233.    Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant, Convergent Outsourcing, Inc.,'s phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

234.    Defendant, Convergent Outsourcing Inc.'s corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant, Convergent Outsourcing, Inc., may have mistakenly believed it had.

235.    Defendant, Convergent Outsourcing, Inc.,'s corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

236.    Defendant, Convergent Outsourcing, Inc., has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

237.     Plaintiff expressly revoked any consent Defendant, Convergent Outsourcing, Inc., may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant, Convergent Outsourcing, Inc.,'s placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

238.    Defendant, Convergent Outsourcing, Inc., never had the Plaintiff's expressed consent for placement of telephone calls to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

239.    None of Defendant, Convergent Outsourcing, Inc.,'s telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

240.    Defendant, Convergent Outsourcing, Inc., violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

241.    Defendant, Convergent Outsourcing, Inc., willfully or knowingly violated the TCPA with respect to the Plaintiff.

### COUNT I
### (Violation of the TCPA Against Convergent Outsourcing, Inc.)

242.    Plaintiff incorporates Paragraphs one hundred ninety one (191) through two hundred forty one (241).

243.    Defendant, Convergent Outsourcing, Inc., willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

244.    Defendant, Convergent Outsourcing, Inc., knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

245.    Defendant, Convergent Outsourcing, Inc., repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

246.    As a result of Defendant, Convergent Outsourcing, Inc.,'s illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

247.    Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Convergent Outsourcing, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Convergent Outsourcing, Inc., for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FDCPA Against Convergent Outsourcing, Inc.)

248.    Plaintiff incorporates Paragraphs one hundred ninety one (191) through two hundred forty one (241).

30

249.     At all times relevant to this action, Defendant, Convergent Outsourcing, Inc., is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

250.     Defendant, Convergent Outsourcing, Inc., engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

251.      Defendant, Convergent Outsourcing, Inc., engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

252.     Defendant, Convergent Outsourcing, Inc., engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

## <u>COUNT III</u>
**(Violation of the FCCPA Against Convergent Outsourcing, Inc.)**

253.     Plaintiff incorporates Paragraphs one hundred ninety one (191) through two hundred forty one (241).

254.     At all times relevant to this action Defendant, Convergent Outsourcing, Inc., is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

255.     Defendant, Convergent Outsourcing, Inc., has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

31

256.    Defendant, Convergent Outsourcing, Inc., has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his  family.

257.    Defendant, Convergent Outsourcing, Inc., has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant, Convergent Outsourcing, Inc., knows that the debt is not legitimate or assert the existence of some legal right when Defendant, Convergent Outsourcing, Inc., knows that right does not exist.

258.    Defendant, Convergent Outsourcing, Inc.,'s actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Convergent Outsourcing, Inc., for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## <u>COUNT IV</u>
### (Invasion of Privacy – Intrusion Upon Seclusion Against Convergent Outsourcing, Inc.)

259.    Plaintiff incorporates Paragraphs one hundred ninety one (191) through two hundred forty one (241).

260.    Defendant, Convergent Outsourcing, Inc., through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

261.    All of the calls made to Plaintiff's cell phone by Defendant, Convergent Outsourcing, Inc., and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

262.    Defendant, Convergent Outsourcing, Inc.,'s persistent autodialed calls to his cellular phone eliminated Plaintiff's right to be left alone.

263.    Defendant, Convergent Outsourcing, Inc.,'s autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during his work, and continually frustrated and annoyed Plaintiff.

264.    These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

265.    By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant, Convergent Outsourcing, Inc., invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

266.    Defendant, Convergent Outsourcing, Inc.,'s harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to his cellular and home telephone after requests to stop is highly offensive to a reasonable person.

267.    Defendant, Convergent Outsourcing, Inc., intentionally intruded upon Plaintiff's solitude and seclusion.

268.    As a result of Defendant, Convergent Outsourcing, Inc.,'s action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, Convergent Outsourcing, Inc., for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

33

## COUNT V
### (Intentional Infliction of Emotional Distress Against Convergent Outsourcing, Inc.)

269.    Plaintiff incorporates Paragraph one hundred ninety one (191) through two hundred forty one (241).

270.    The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

271.    It is beyond the pale of decency to robocall anybody 200 times.

272.    The damage to the Plaintiff was and is immense.  The Plaintiff had a stunned sense of helplessness because he could not stop the calls.

273.    To call somebody this amount of time is inhumane.

274.    It is utterly uncivilized to robocall someone 200 times.

275.    If a person called another person  times, the caller would most likely be in prison for criminal harassment.

276.    This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

277.    The calls to Plaintiff by Defendant, Convergent Outsourcing, Inc., are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant, Convergent Outsourcing, Inc., for punitive damages and such other and further relief as the Court shall deem just and proper.

### FACTUAL ALLEGATIONS REGARDING EGS FINANCIAL CARE, INC..

278.    Plaintiff is a natural person and citizen of the State of Florida, residing in Homestead, Florida.

34

279.    Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

280.    Plaintiff is an "alleged debtor."

281.    Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

282.    Defendant EGS FINANCIAL CARE, INC., Inc, is a Foreign Profit Corporation Company with its principal place of business in Horsham, Pennsylvania, and regularly conducts business in Florida.

283.    Defendant, EGS FINANCIAL CARE, INC.., is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

284.    The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

285.    Plaintiff is the regular user and carrier of the cellular telephone number at issue (786) 728-2298.

286.    Plaintiff was the "called party" during each phone call subject to this lawsuit.

287.    Defendant, EGS FINANCIAL CARE, INC. intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

288.    Defendant, EGS FINANCIAL CARE, INC., did not have the "express consent" of the Plaintiff to call his cell phone.

289.    "Express consent" is narrowly construed by the Courts.

290.    It is the Defendant, EGS FINANCIAL CARE, INC. burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

291.    It is the Defendant, EGS FINANCIAL CARE, INC.'s burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an ATDS for each account they were calling on.

292.    Defendant, EGS FINANCIAL CARE, INC., was put on notice Plaintiff did not want the Defendant, EGS FINANCIAL CARE, INC. contacting him.

293.    Defendant, EGS FINANCIAL CARE, INC., did not have the express consent of the Plaintiff to call him on the accounts they called him on.

294.    Plaintiff expressly revoked any express consent Defendant, EGS FINANCIAL CARE, INC., may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

295.    Defendant, EGS FINANCIAL CARE, INC., attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

296.    Defendant, EGS FINANCIAL CARE, INC., made at least one call to (786) 728-2298.

297.    Defendant, EGS FINANCIAL CARE, INC., made at least one call to (786) 728-2298 using an ATDS.

298.    Defendant, EGS FINANCIAL CARE, INC., made at least ten (10) calls to (786) 728-2298.

299.   Defendant, EGS FINANCIAL CARE, INC., made at least ten (10) calls to (786) 728-2298 using an ATDS.

300.   Defendant, EGS FINANCIAL CARE, INC., made at least thirty (30) calls to (786) 728-2298.

301.   Defendant, EGS FINANCIAL CARE, INC., made at least thirty (30) calls to (786) 728-2298 using an ATDS.

302.   Each call the Defendant, EGS FINANCIAL CARE, INC., made to (786) 728-2298 in the last four years was made using an ATDS.

303.   Each call the Defendant, EGS FINANCIAL CARE, INC., made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

304.   Defendant, EGS FINANCIAL CARE, INC., has called other people's cell phones without their express consent.

305.   Each call the Defendant, EGS FINANCIAL CARE, INC., made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

306.   The calls at issue were placed by the Defendant, EGS FINANCIAL CARE, INC., using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

307.   Plaintiff repeatedly requested the Defendant, EGS FINANCIAL CARE, INC. to stop calling  his cell phone, however, the Defendant, EGS FINANCIAL CARE, INC., continued to make calls.

308.   Defendant, EGS FINANCIAL CARE, INC., has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

309.   Plaintiff's conversations with the Defendant, EGS FINANCIAL CARE, INC., putting them on notice that they did not want more phone calls were ignored.

310.   Defendant, EGS FINANCIAL CARE, INC., has recorded at least one conversation with the Plaintiff.

311.   Defendant, EGS FINANCIAL CARE, INC., has recorded numerous conversations with the Plaintiff.

312.   Defendant, EGS FINANCIAL CARE, INC., has made approximately thirty (30) calls to Plaintiff's aforementioned cellular telephone number since in or about June of 2015 which will be established exactly once Defendant, EGS FINANCIAL CARE, INC., turns over their dialer records.

313.   Despite actual knowledge of their wrongdoing, the Defendant, EGS FINANCIAL CARE, INC., continued the campaign of abusive robocalls.

314.   Defendant, EGS FINANCIAL CARE, INC., has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

315.   By effectuating these unlawful phone calls, Defendant, EGS FINANCIAL CARE, INC., have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

316.   Defendant, EGS FINANCIAL CARE, INC.,'s aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

317.   Defendant, EGS FINANCIAL CARE, INC.,'s phone calls harmed Plaintiff by wasting his time.

318.    Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant, EGS FINANCIAL CARE, INC.,'s phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

319.    Defendant, Convergent Outsourcing Inc.'s corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant, EGS FINANCIAL CARE, INC., may have mistakenly believed it had.

320.    Defendant, EGS FINANCIAL CARE, INC.,'s corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

321.    Defendant, EGS FINANCIAL CARE, INC., has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

322.    Plaintiff expressly revoked any consent Defendant, EGS FINANCIAL CARE, INC., may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant, EGS FINANCIAL CARE, INC.,'s placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

323.    Defendant, EGS FINANCIAL CARE, INC., never had the Plaintiff's expressed consent for placement of telephone calls to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

324.    None of Defendant, EGS FINANCIAL CARE, INC.,'s telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

325.    Defendant, EGS FINANCIAL CARE, INC., violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

326.    Defendant, EGS FINANCIAL CARE, INC., willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA Against EGS FINANCIAL CARE, INC.)

327.    Plaintiff incorporates Paragraphs two hundred seventy eight (278) through three hundred twenty six (326).

328.    Defendant, EGS FINANCIAL CARE, INC., willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff without his permission and after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

329.    Defendant, EGS FINANCIAL CARE, INC., knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

330.    Defendant, EGS FINANCIAL CARE, INC., repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

331.    As a result of Defendant, EGS FINANCIAL CARE, INC.,'s illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

332.    Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, EGS FINANCIAL CARE, INC., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EGS FINANCIAL CARE, INC., for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

<u>**COUNT II**</u>
**(Violation of the FDCPA Against EGS FINANCIAL CARE, INC.)**

333.    Plaintiff incorporates Paragraphs two hundred seventy eight (278) through three hundred twenty six (326).

334.    At all times relevant to this action, Defendant, EGS FINANCIAL CARE, INC., is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

335.    Defendant, EGS FINANCIAL CARE, INC., engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

336.    Defendant, EGS FINANCIAL CARE, INC., engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

337.    Defendant, EGS FINANCIAL CARE, INC., engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FCCPA Against EGS FINANCIAL CARE, INC.)

338.     Plaintiff incorporates Paragraphs two hundred seventy eight (278) through three hundred twenty six.

339.     At all times relevant to this action Defendant, EGS FINANCIAL CARE, INC., is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

340.     Defendant, EGS FINANCIAL CARE, INC., has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

341.     Defendant, EGS FINANCIAL CARE, INC., has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his  family.

342.     Defendant, EGS FINANCIAL CARE, INC., has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant, EGS FINANCIAL CARE, INC., knows that the debt is not legitimate or assert the existence of some legal right when Defendant, EGS FINANCIAL CARE, INC., knows that right does not exist.

343.     Defendant, EGS FINANCIAL CARE, INC.,'s actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EGS FINANCIAL CARE, INC., for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT IV
**(Invasion of Privacy – Intrusion Upon Seclusion Against EGS FINANCIAL CARE, INC.)**

344.   Plaintiff incorporates Paragraphs two hundred seventy eight (278) through three hundred twenty six (326).

345.   Defendant, EGS FINANCIAL CARE, INC., through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

346.   All of the calls made to Plaintiff's cell phone by Defendant, EGS FINANCIAL CARE, INC., and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

347.   Defendant, EGS FINANCIAL CARE, INC.,'s persistent autodialed calls to his cellular phone eliminated Plaintiff's right to be left alone.

348.   Defendant, EGS FINANCIAL CARE, INC.,'s autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during his work, and continually frustrated and annoyed Plaintiff.

349.   These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

350.   By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant, EGS FINANCIAL CARE, INC., invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

351.   Defendant, EGS FINANCIAL CARE, INC.,'s harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to his cellular and home telephone after requests to stop is highly offensive to a reasonable person.

352.     Defendant, EGS FINANCIAL CARE, INC., intentionally intruded upon Plaintiff's solitude and seclusion.

353.     As a result of Defendant, EGS FINANCIAL CARE, INC.,'s action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, EGS FINANCIAL CARE, INC., for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

<u>**COUNT V**</u>
**(Intentional Infliction of Emotional Distress Against EGS FINANCIAL CARE, INC.)**

354.     Plaintiff incorporates Paragraph two hundred seventy eight (278) through three hundred twenty six (326).

355.     The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

356.     It is beyond the pale of decency to robocall anybody  times.

357.     The damage to the Plaintiff was and is immense.  The Plaintiff had a stunned sense of helplessness because he could not stop the calls.

358.     To call somebody this amount of time is inhumane.

359.     It is utterly uncivilized to robocall someone  times.

360.     If a person called another person  times, the caller would most likely be in prison for criminal harassment.

361.     This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

362.    The calls to Plaintiff by Defendant, EGS FINANCIAL CARE, INC., are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant, EGS FINANCIAL CARE, INC., for punitive damages and such other and further relief as the Court shall deem just and proper.

Respectfully submitted,


*/s/ Heather H. Jones*
Heather H. Jones, Esq.
Florida Bar No. 0118974
William "Billy" Peerce Howard, Esq.
Florida Bar No. 0103330
THE CONSUMER PROTECTION FIRM, PLLC
4030 Henderson Blvd.
Tampa, FL 33629
Telephone: (813) 500-1500, ext. 205
Facsimile: (813) 435-2369
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*